[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Pursuant to an Order entered on February 12, 1992, the Superior Court, the Honorable Robert D. Krause presiding, approved the application of Maurice C. Paradis, then Director of the Department of Business Regulation as Receiver of Heritage Loan and Investment Company ("Receiver") to have the Court appoint a master with respect to claims relating to "off-line" deposit accounts at Heritage Loan and Investment Company ("Heritage"). See the Order dated February 12, 1992. As a result of said Order, William J. McAtee, Administrator/Master of the Superior Court was appointed as Master in the above-captioned receivership.
The Order provided that the Master:
 "is appointed . . . for the purpose of hearing and determining the claims filed with the receiver relating to off-line deposit accounts, which claims shall be deemed to include claims to funds evidenced by handwritten or typewritten savings passbooks claims to funds alleged to have been withdrawn without the depositor's authority to do so, claims to funds evidenced by safekeeping receipts, and claims to any funds which are not verifiable on the computer records maintained by Heritage Loan and Investment Company;"
 "That Master McAtee shall have all of the powers of a Justice of the Superior Court with respect to the hearings and determination of off-line deposit account claims, including without limitation those powers enumerated in Rhode Island General Laws 8-2-11.1 (1985 Reenactment)
G.L. 8-2-11.1 provides in pertinent part that:
 "Such administrator/master may be authorized: (1) To regulate all proceedings before him; (2) To do all acts and take all measures necessary or proper for the efficient performance of his duties; (3) To require the production before him of books papers, vouchers documents and writings: (4) To rule on the admissibility of evidence; (5) To issue subpoenas for the appearance of witnesses, to put witnesses on oath to examine them and to call parties to the proceeding and examine them upon oath;"
In accordance with the above a hearing was held on the above referenced claim on November 23, 1993 and June 10, 1994. At the conclusion of the hearing, the parties submitted Post-Hearing Memoranda.
Claimant alleges that three accounts were established at Heritage Loan Investment in 1980. All three accounts were established in fictitious names in order to conceal his assets from his wife with whom he states that he was having "family difficulties." The first account was opened on July 9, 1980 in the amount of $70,000 in the name of "Katherine Murphy". The second was opened on July 10, 1980 when $60,000 was placed in an account in the name of "Carol Gold". Finally, on July 11, 1980 $30,000 was placed in an account in the name of "George Briggs".
These Claimed accounts were added to as follows; on July 9, 1987 $15,000 was added to the account of "Carol Gold": $30,000 was added to the "George Briggs" account on September 25, 1984 and $10,000 to this same account on July 9, 1987 The entries so far described were handwritten rather than computer generated.
By the middle of the 1980's these accounts were not reflected in the computer records of Heritage and no deposit or withdrawal slips were introduced into evidence Since no records of these accounts could be found in the heritage records the Receiver has denied the claims and maintains that they are not entitled to priority because they were not in the ordinary course of business at Heritage.
When a party makes a claim for funds allegedly on deposit at a financial institution the party so claiming bears the burden of proof to establish the existence of the account so claimed.O'Neil v. New England Trust Co., 28 R.I. 311. 67 A. 63 (1907). A passbook reflecting such a deposit is prima facie evidence of such a deposit. However, the Receiver may introduce evidence to refute the prima facie case.
The term "deposit" is defined at 12 U.S.C. § 1813(1) which state in pertinent part as follows:
 (1) The unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time, or thrift account, or which is evidenced by a certificate of deposit, thrift certificate, investment certificate, certificate of indebtedness or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association or a letter of credit or a travelers check on which the bank or savings association is primarily liable. . .
 (3) money received or held by a bank or savings association, or the credit given for money or its equivalent received or held by a bank or savings association in the usual course of business for a special or specific purpose regardless of the legal relationship thereby established including without being limited to escrow funds funds held as security for an obligation due to the bank or savings association or others (including funds held as dealers reserves) or for securities loaned by the bank or savings association, funds deposited by debtor to meet maturing obligations funds deposited as advance payment on subscriptions to United States Government securities funds held to meet its acceptances or letters of credit. and withheld taxes: Provided that there shall not be included funds which are received by the bank or savings association for immediate application to reduction of indebtedness to the receiving bank or savings association. or under condition that receipt thereof immediately reduces or extinguishes such indebtedness.
In Federal Deposit Insurance Corp. v. Philadelphia GearCorp., 476 U.S. 426, 106 S.Ct. 1931, 90 L.ED.2d 428 (1986), the Supreme Court listed the standards to be met in order to be classified as a "deposit". The Court stated that to qualify as a "deposit" under 12 U.S.C. § 1813 (l)(1). it must be shown that: (1) there is an unpaid balance; (2) of hard earnings; (3) received or held by the bank; (4) in its usual course ofbusiness (emphasis added); (5) for which it has given or is obligated to give credit. In Philadelphia Gear, the Court held that a stand-by letter of credit did not fall within the meaning of an insurable "deposit" because it was only a contingent obligation and did not represent "hard earnings".
Joseph Mollicone, Jr., former president of Heritage, testified at the hearing Mollicone claimed that the accounts in question although in fact opened by Claimant in the fictitious names, were accounts held with him personally and not deposit accounts with Heritage. Mollicone stated that he not Heritage, was responsible for the principle and interest payments it should be that Claimant who appeared pro se denies that interest was either due or paid to him and engaged the witness in a long and unenlightening cross examination that was a combination of question and (The Court will note that the passbooks introduced by Claimant do in fact carry handwriting entries for interest)
Claimant freely admits that he was trying to hide his funds and has testified that it was Mollicone that suggested the use of fictitious names to accomplish this goal Claimant further suggests that his funds were never entered into the Heritage computer system because someone at the institution converted the funds for their own use and not because he had established the accounts with Mollicone personality.
In the instant case the Court finds for the Claimant. Unlike the other claims, this involved the use of fictitious names for the off line accounts. The Court is not convinced that this would have been done if the accounts were to be established with Mollicone rather Heritage If Mollicone had the funds with no records keep at Heritage the use of the fictitious names would serve no purpose. The Court believes that Claimant was justified in believing that he was "hiding" his money with a financial institution rather than giving control of it to an individual.
Accordingly, the Court finds that Claimant is a depositor of the institution and as such is entitled to priority.